IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:21-CV-329-KS

| | |
|---|---|
| DENNIS LOVETTE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **ORDER** |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security | ) |
| Administration, | ) |
| Defendant. | ) |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the parties having consented to proceed pursuant to 28 U.S.C. § 636(c). Dennis Lovette ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of his application for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI"). On June 14, 2022, the court held oral argument in the matter. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the court grants Plaintiff's Motion for Judgment on the Pleadings [DE #18], denies Defendant's Motion for Judgment on the Pleadings [DE #24], and remands the case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

## STATEMENT OF THE CASE

Plaintiff applied for DIB and SSI on March 15, 2019, with an alleged onset date of June 1, 2018. (R. 15, 258–71.) The application was denied initially and upon reconsideration, and a request for hearing was filed. (R. 15, 110–11, 144–45, 201–02.) A telephonic hearing was held on January 6, 2021, before Administrative Law Judge ("ALJ") Joseph L. Brinkley, who issued an unfavorable ruling on February 3, 2021. (R. 12–81.) On June 16, 2021, the Appeals Council denied Plaintiff's request for review. (R. 1–6.) At that time, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. On August 16, 2021, Plaintiff filed the instant civil action, seeking judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (citations

omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Albright v. Comm'r of SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th. Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id.* In making this determination, the ALJ must decide "whether the claimant is able to

3

perform other work considering both [the claimant's residual functional capacity] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). "If the Commissioner meets [this] burden, the ALJ finds the claimant not disabled and denies the application for benefits." *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).

### III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act ("the Act"). As a preliminary matter related to the DIB claim, the ALJ found Plaintiff meets the insured status requirements of the Act through December 31, 2023. (R. 18.) At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since June 1, 2018, the alleged onset date. (*Id.*) Next, the ALJ determined Plaintiff has the severe impairments of diabetes mellitus, left shoulder arthritis/bursitis/adhesive capsulitis, and depressive disorder. (*Id.*)

At step three, the ALJ concluded Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (R. 18–19.) The ALJ expressly considered Listings 1.02, 9.00(B)(5) in connection with other listings relating to diabetes mellitus, and 12.04. (R. 19.)

Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff has

the residual functional capacity to perform sedentary work, as defined in 20 CFR 404.1567(c) and 416.967(c), except he is not able to use his left dominant upper extremity for overhead lifting, reaching, pushing or pulling but is otherwise able to use his bilateral upper extremities frequently to lift, reach, push and pull in all other directions. Frequently, he is able to handle, finger and feel with his left upper extremity, and occasionally can use his lower extremities to operate foot and leg controls. Occasionally, [Plaintiff] is able to climb ramps and stairs and to kneel, crouch and stoop but never climb ladders, ropes or scaffolds. Occasionally, he can be exposed to temperature extremes. He cannot work around unprotected heights and dangerous moving mechanical parts; nor can he stand or walk on narrow, slippery slopes. [Plaintiff] has a reasoning level of two, as defined by the Dictionary of Occupational Titles (DOT) and has the capacity to engage in simple, routine and repetitive tasks in two-hour intervals. Occasionally, [Plaintiff] can have direct interaction with the general public, coworkers and supervisors and is able to perform low stress occupations, which is meant to include occupations not requiring a specific number of quotas on a defined timeline or fast-paced assembly line work.

(R. 20–21.) In making this assessment, the ALJ stated that he considered Plaintiff's symptoms and the evidence (both "objective medical" and "other") based on the requirements of 20 C.F.R. §§ 404.1529, 416.929, and SSR 16–3p, 2017 WL 5180304 (Oct. 25, 2017) and found Plaintiff's statements concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms "not entirely consistent with the medical evidence and other evidence in the record." (R. 21–22.) At step four, the ALJ concluded that Plaintiff is unable to perform any past relevant work. (R. 27.) Nonetheless, at step five, upon considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, namely: document preparer (DOT #249.587-018) and final assembler (DOT #713.687-018). (R. 28.)

## IV. Plaintiff's Argument

Plaintiff raises two related arguments,[1] each relating to the ALJ's finding that Plaintiff can frequently use his left arm for frontal and lateral reaching: (A) the ALJ's decision contains material inconsistencies which frustrate meaningful review and (B) the ALJ failed to explain "how the evidence listed in his decision shows that [Plaintiff] can engage in frequent reaching with the [left arm] in directions other than overhead." (Pl.'s Mem. Supp. Mot. J. Pldgs. [DE #19] at 6–12.) In response, the Commissioner contends there is no material inconsistency in ALJ Brinkley's opinion and ALJ Brinkley sufficiently explained his finding as to Plaintiff's left arm reaching abilities. (Def.'s Mem. Supp. Mot. J. Pldgs. [DE #25] at 27–30.) For the reasons explained below, the undersigned agrees with Plaintiff.

The RFC is an administrative assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite impairments and related symptoms. SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96–8p, 1996 WL 374184, at *1. In determining the RFC, the ALJ considers an individual's ability to meet the physical, mental, sensory, and other requirements of work. 20 C.F.R. §§ 404.1545(a)(4), 416.945(a)(4). It is based

---

[1] At oral argument, Plaintiff waived his constitutional arguments (Audio of June 14, 2022, Oral Argument at 1:41 p.m.; *see* Pl.'s Mem. Supp. Mot. J. Pldgs. at 12–21 (constitutional arguments)), and, therefore, the court only addresses Plaintiff's substantive, RFC-based arguments.

upon all relevant evidence, which may include the claimant's own description of limitations from alleged symptoms. SSR 96–8p, 1996 WL 374184, at *5; 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). If necessary, an ALJ must "explain how any material inconsistencies or ambiguities in the evidence were considered and resolved." SSR 96–8p, 1996 WL 374184, at *7.

An ALJ must "include a narrative discussion describing how the evidence supports each conclusion" in the RFC. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636). The ALJ must specifically explain how certain pieces of evidence support particular conclusions and "discuss[ ] . . . which evidence the ALJ found credible and why." *Monroe*, 826 F.3d at 189 (quoting *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). The Fourth Circuit has interpreted this to require an ALJ to "build an accurate and logical bridge from the evidence to his conclusion." *Monroe*, 826 F.3d at 189 (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).

"[A] proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion . . . . [M]eaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (citing *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018)). Simply put, this means an ALJ must "[s]how [his] work." *Patterson v. Comm'r of SSA*, 846 F.3d 656, 663 (4th Cir. 2017) (applying same principle to an ALJ's listing analysis). Such analysis—"[h]armonizing conflicting evidence and bolstering inconclusive findings," *Patterson*, 846 F.3d at 662—is a "necessary predicate" to

7

determining whether substantial evidence supports the Commissioner's findings, *Monroe*, 826 F.3d at 189 (quoting *Radford*, 734 F.3d at 295). Where a court is "left to guess about how the ALJ arrived at [his] conclusions on [a claimant's] ability to perform relevant functions . . . , remand is necessary." *Mascio*, 780 F.3d at 637.

The key portion of ALJ Brinkley's opinion is his analysis of the medical opinions of two state agency consultants, Dr. Celeste Williams and Dr. Melvin Clayton, each of whom opined that Plaintiff's RFC was different than that assessed by the ALJ. (R. 26.) As noted by ALJ Brinkley, Dr. Williams limited Plaintiff to work at the light exertional level but with left arm reaching, both overhead and frontally/laterally, limited to only occasional use. (*Id.*; *see also* R. 91 (Dr. Williams' opinion).) Dr. Clayton limited Plaintiff to work at the medium exertional level but with the same left arm reaching limitation as Dr. Williams. (R. 26 (ALJ noting Dr. Clayton's opinion); R. 121–22 (Dr. Clayton's opinion).) ALJ Brinkley stated that he did not find the opinions of these two doctors persuasive "because the evidence supports further limitations. I find [Plaintiff] is limited to work at the sedentary exertional [level] with additional reaching, pushing and pulling limits due to range of motion deficits and mildly diminished strength in his left shoulder but he had good strength and range of motion in his right upper extremity." (R. 26.) Despite limiting Plaintiff's overall exertional level more than the two state agency consultants, ALJ Brinkley found Plaintiff less limited regarding the ability to reach frontally and laterally with the left arm. (*Compare* R. 20 *with* R. 26.) Plaintiff's ability to reach frontally and laterally with his left arm is critical for the disability determination

8

because the Vocational Expert testified that a limitation to occasional frontal and lateral reaching with the left arm would preclude work. (R. 78–79.)

Plaintiff contends that the ALJ's analysis and assessment of Plaintiff's left arm reaching ability is materially inconsistent because the ALJ rejected the state agency medical opinions as insufficiently restrictive and yet imposed a less restrictive RFC as to Plaintiff's ability to reach with his left arm. (Pl.'s Resp. Opp'n [DE #27] at 6 (noting that the ALJ believed "additional reaching, pushing and pulling limits" were required (quoting R. 26)).) In contrast, the Commissioner offers two alternative interpretations of ALJ Brinkley's analysis: (i) the ALJ was referring to the overall exertional level assessed in the RFC (sedentary as opposed to medium and light) (Def.'s Mem. Supp. Mot. J. Pldgs. at 30) or (ii) the ALJ imposed more severe reaching limitations as to Plaintiff's left arm to the extent the ALJ found Plaintiff entirely unable to use his left arm for overhead reaching (Audio of June 14, 2022, Oral Argument at 1:57–1:58 p.m).

Each of the foregoing positions is plausible. However, ALJ Brinkley failed to sufficiently explain why Plaintiff retained greater frontal and lateral reaching ability with his left arm than the state agency consultants opined, especially in light of the ALJ's remark that "the evidence supports further limitations . . . with additional reaching, pushing and pulling limits." (R. 26.) This statement creates an apparent inconsistency within the ALJ's opinion about a critical work-related function. Moreover, the ALJ's explanation does not allow the court to undertake meaningful

9

review because the ALJ's reasoning is unclear. *See Mascio*, 780 F.3d at 637; *Monroe*, 826 F.3d at 189. Accordingly, remand is necessary.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Judgment on the Pleadings [DE #18] is GRANTED, Defendant's Motion for Judgment on the Pleadings [DE #24] is DENIED, and the matter is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this order

This 12th day of July 2022.

_____
KIMBERLY A. SWANK
United States Magistrate Judge